999 So.2d 488 (2007)
Christy A. JACKSON
v.
Joseph JACKSON III.
2050716.
Court of Civil Appeals of Alabama.
April 13, 2007.
Certiorari Denied June 27, 2008 Alabama Supreme Court 1061076.
*490 Elizabeth G. Messer of Gonce, Young & Collum-Butler, Florence, for appellant.
Lindsey Mussleman Davis of Holt, Mussleman, Holt & Morgan, Florence, for appellee.
MOORE, Judge.
Christy A. Jackson ("the wife") appeals from the trial court's final judgment divorcing her from Joseph Jackson III ("the husband"). We affirm in part, reverse in part, and remand.
On November 29, 2005, the husband petitioned for a divorce from the wife. In *491 that petition, the husband also sought temporary custody of the two minor children born of the marriage. The court granted the husband temporary legal custody of the children. The wife filed an answer to the husband's petition on March 17, 2006. That same day, the wife filed a petition for visitation and a petition for access to the real property acquired during the marriage.
On April 10, 2006, the trial court conducted a trial in which it received ore tenus evidence. The trial court entered a final judgment divorcing the parties on April 25, 2006.
In the divorce judgment, the court awarded the husband the marital residence and assigned him all of the debt associated with the residence. It awarded the husband and the wife the personal property presently in his or her possession, except that the wife was also awarded a Dell computer, two beds, four dressers, a rocking chair, a crib, baby clothes, two wicker shelving units, Christmas decorations, two end tables, stuffed animals, Disney movies, shoes, clothing, hair rollers, a picture frame, dishes, glassware, pictures, cookware, serving pieces and utensils, a toy box, a wood clarinet, and a washer and dryer. Other than the debt on the marital residence, each party was to be responsible for the debts in his or her name.
The court awarded the husband "primary" legal and physical custody of the two children, subject to standard visitation by the wife. The trial court limited the wife's standard visitation by ordering that her visitation be exercised at the her mother's home and that the wife not take the children from her mother's home unless her mother accompanies her. The trial court ordered the wife to pay $259 per month in child support.
On April 26, 2006, the wife filed a motion seeking relief from the judgment under Rule 59 and Rule 60, Ala. R. Civ. P. The wife's motion first challenged the supervised-visitation provision of the judgment on the grounds (1) that it was not in the best interest of the children, and (2) that the wife's mother had not consented to and could not be compelled to supervise the visitation. The wife also challenged the trial court's award of child support based on her having received, after the trial, additional pay stubs that showed her gross monthly income was only $139.48. She further asserted that she had been unable to secure additional employment.
On May 10, 2006, the trial court denied the wife's postjudgment motion. The court stated that it had not required the wife's mother to take any action but had simply conditioned the wife's visitation on being supervised by the wife's mother so as to provide for the children's safety and security. The court gave the wife an opportunity to submit a list of other suitable parties who were willing to supervise her visitation. The court also reiterated that the wife's child-support obligation had been based on the court's having imputed to the wife minimum-wage income, as set out in the original judgment, and noted that the mother could not choose to work at a job for less than minimum wage.
On May 25, 2006, the wife responded to the court's order, stating that there were no individuals willing to supervise her visitation. On June 1, 2006, the wife filed her notice of appeal.
The wife raises the following issues on appeal: (1) whether the trial court erred in denying her postjudgment motion without a hearing; (2) whether the trial court erred in granting primary legal and physical custody of the children to the husband; (3) whether the trial court erred in granting the mother only supervised visitation; (4) whether the trial court erred in ordering *492 the mother to pay child support that exceeded her income; and (5) whether the trial court erred in dividing the marital and premarital property.

I. Denial of Hearing on Postjudgment Motion

"Rule 59(g), Ala. R. Civ. P., provides that post-judgment motions `shall not be ruled upon until the parties have had an opportunity to be heard thereon.' ... [I]f a hearing is requested, it must be granted." Geisenhoff v. Geisenhoff, 693 So.2d 489, 492 (Ala.Civ.App.1997); In re Weaver, 451 So.2d 350, 352 (Ala.Civ.App.1984). However, if a party fails to request a hearing on his or her postjudgment motion, failure to hold a hearing is not error. Geisenhoff, 693 So.2d at 492; Weaver, 451 So.2d at 352 ("In the absence of a request for a hearing on the motion for rehearing, the trial court was not in error in ruling on the motion without a hearing.").
In this case, the wife moved for relief from the divorce judgment under Rule 59 and Rule 60, Ala. R. Civ. P. She failed, however, to request a hearing on the motion. Accordingly, the trial court did not err by ruling on the wife's postjudgment motion without a hearing.

II. Custody

The wife next asserts that the custody provision in the trial court's judgment is ambiguous. The custody provision provides: "Primary legal custody and primary physical custody of the children of the parties ... will be with their father, Joseph Jackson, III, subject to the visitation rights of the children and the mother." Although the terms "primary physical custody" and "primary legal custody" have been generally disfavored by this court, we have held that custody provisions like the one at issue in this case can be interpreted only one way  as an award of sole legal and physical custody, subject to the visitation rights of the noncustodial parent. Fotheringham v. Fotheringham, 950 So.2d 339, 342 (Ala.Civ.App.2006). We find no ambiguity in this language that would warrant reversal.
We therefore must determine if the trial court's award of sole legal and physical custody to the husband exceeded the trial court's discretion. "A trial court's custody determination following the presentation of ore tenus evidence is presumed correct, and that judgment will not be set aside on appeal absent a finding that the trial court abused its discretion or that its determination is so unsupported by the evidence as to be plainly and palpably wrong." Steed v. Steed, 877 So.2d 602, 604 (Ala.Civ.App.2003). "This court may not substitute its judgment for that of the trial court." Somers v. McCoy, 777 So.2d 141, 142 (Ala.Civ.App.2000). "The controlling consideration in child-custody matters is always the best interests of the child." Patrick v. Williams, 952 So.2d 1131, 1140 (Ala.Civ.App.2006).
In this case, there was evidence indicating that in the year before the final hearing the wife had initially moved out of the marital home and had left the children in the custody of the husband for three or four months. When the wife left the marital home for a second time in August 2005, she again left the children in the custody of the husband. Between August 2005 and the date of the hearing, the wife had not visited with the children overnight, and she had only seen the children for daytime visits at the wife's mother's home two or three times per month. During that time, the wife had been arrested for writing worthless checks. There was also evidence indicating that the wife had used marijuana.
Based on the evidence presented to the trial court, we find that the trial court *493 acted within its discretion in awarding the husband sole legal and physical custody.

III. Child Support

The wife asserts that the trial court exceeded its discretion in ordering her to pay child support in the amount of $259 per month in light of the evidence, presented in support of her postjudgment motion, of a change in her income; however, that evidence was not properly before the trial court. A change in income occurring after a trial is new evidence, not newly discovered evidence. Estrada v. Redford, 855 So.2d 551, 554 (Ala.Civ.App. 2003).
"When a party has new evidence as to her income, she may be entitled to a modification of her child-support obligation if she files a petition to modify....
"A petition to modify, however, is a separate action that requires a proper filing, the payment of a filing fee, and service."
Id. The wife did not file a petition to modify her child-support obligation. Accordingly, the trial court did not err in failing to consider the evidence of her changed income.
Because the evidence of the wife's change in income presented in support of the wife's postjudgment motion was not properly before the trial court, we review the trial court's determination of child support in light of the evidence presented at trial. The wife presented evidence indicating that she earned $400 monthly. In the divorce judgment, however, the trial court stated that it based its child-support calculation on the wife's being employed full-time earning the minimum wage. Thus, the trial court must have found that the wife was voluntarily underemployed.
"A court may impute income to a parent upon a finding that the parent is voluntarily unemployed or underemployed. Rule 32(B)(5), Ala. R. Jud. Admin. A trial court does not have to make a specific finding that the parent is voluntarily unemployed or underemployed; such a finding may be implicit in the trial court's judgment."
Schiesz v. Schiesz, 941 So.2d 279, 287 (Ala. Civ.App.2006).
In this case, the trial court's implicit finding that the wife was voluntarily underemployed is not supported by the evidence. The wife had been discharged from her previous job but had been working at her current job for three weeks at the time of the trial. She was also seeking a second job but had been unable to secure any additional employment. The wife testified that her job search was limited because the husband had taken her only vehicle. Because the evidence shows that the wife's underemployment was not voluntary, the trial court exceeded its discretion in imputing full-time minimum-wage income to the wife.

IV. Supervised Visitation

The wife also challenges the trial court's order that her visitation with the children must be supervised.
"The trial court has broad discretion in determining the visitation rights of a noncustodial parent, and its decision in this regard will not be reversed absent an abuse of discretion. Alexander v. Alexander, 625 So.2d 433, 435 (Ala.Civ. App.1993). Every case involving a visitation issue must be decided on its own facts and circumstances, but the primary consideration in establishing the visitation rights accorded a noncustodial parent is always the best interests and welfare of the child."
Carr v. Broyles, 652 So.2d 299, 303 (Ala. Civ.App.1994).
*494 The record in this case reveals the following. The husband's mother testified at trial that she did not have a problem with the children seeing the wife and that she thought it would be great for the children to see her. However, the husband's mother did have a problem with the children being around the wife's former boyfriend and other people with whom the wife associated. The husband testified that he would like for the wife to visit with the children as much as possible at her mother's home or her grandmother's home.
It was undisputed that the wife's former boyfriend used marijuana, was bipolar, and had previously been in drug rehabilitation. The husband also testified that the wife's sister had told him that the wife's former boyfriend had threatened him. Even though the wife testified that she allowed her former boyfriend to be present when the children were in her custody, there was no evidence indicating that such contact had harmed the children. As to the wife's character, it was also undisputed that the wife had been arrested for writing worthless checks. However, the wife testified that those charges were being dismissed. There was conflicting evidence concerning whether the wife had used marijuana. However, there was no evidence indicating that the wife had ever exposed the children to illegal drug use or associated activity or conversation.
This court has affirmed orders of supervised visitation in cases in which there were allegations that the noncustodial parent had abused the child or that the noncustodial parent had severe psychological problems. See Carr, 652 So.2d at 303. In this case, however, there is no evidence indicating that the wife has abused the children or that the wife has any severe psychological problems. Furthermore, there is no evidence indicating that the wife is unfit or unable to care for her children without supervision or additional assistance.
The wife has a constitutional right to a relationship with her children. See, e.g., Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). The children have a fundamental right to free association with their mother. See Webster v. Ryan, 189 Misc.2d 86, 729 N.Y.S.2d 315 (N.Y.Fam.Ct.2001). "Visitation is the joint right of both the noncustodial parent and the child.... The best interests of the child are furthered by the child being nurtured and guided by both of his or her natural parents." Johnita M.D. v. David D.D., 191 Misc.2d 301, 303, 740 N.Y.S.2d 811, 813 (N.Y.Sup.Ct.2002); see also Appolon v. Faught, 796 N.E.2d 297, 300 (Ind.Ct. App.2003) ("[T]he right of non-custodial parents to visit with their children is a `sacred and precious privilege.'"). The state should not intrude on these constitutional rights any more than is necessary to protect a compelling state interest. See M.L.B. v. S.L.J., 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). "The trial court is entrusted to balance the rights of the parents with the child's best interests to fashion a visitation award that is tailored to the specific facts and circumstances of the individual case." Nauditt v. Haddock, 882 So.2d 364, 367 (Ala.Civ.App. 2003). Once the trial court has identified a particular danger to the health, safety, or welfare of the child, and the record establishes that some restriction on visitation is necessary to protect the child, it must mold its visitation order to target that specific concern. See Anderson v. Anderson, 147 Ohio App.3d 513, 771 N.E.2d 303 (2002). The trial court has broad discretion in fashioning an appropriate visitation order; however, it exceeds its discretion when it selects an overly broad restriction that does more than address a particular concern and thereby *495 unduly infringes upon the parent-child relationship.
In this case, the trial court did not tailor the visitation award to the particular dangers at issue. Presumably, the trial court found that the wife's former boyfriend's influence and the wife's purported use of marijuana posed a threat to the best interests of the children. If so, the trial court should have tailored its visitation order to address those concerns, such as by requiring the wife to exercise visitation in the absence of her former boyfriend and by ordering the wife not to expose the children to illegal drug use, activity, or associated conversation. The trial court used overly broad means  supervised visitation  to accomplish those goals. Accordingly, we find that the trial court exceeded its discretion.

V. Property Division

The wife next argues that the trial court erred in dividing the marital property.
"The trial court is afforded a wide degree of discretion in dividing the marital assets of the parties upon divorce. Cantrell v. Cantrell, 773 So.2d 487, 489 (Ala.Civ.App.2000). The only limitation on that discretion is that the division of property be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court. Ross v. Ross, 447 So.2d 812, 813 (Ala.Civ.App.1984). In making the division, the trial court may consider several factors, including the parties' respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz, 485 So.2d 1174, 1176 (Ala.Civ.App.1986). A property division made by a trial court will not be set aside on appeal absent a palpable abuse of its discretion."
TenEyck v. TenEyck, 885 So.2d 146, 154 (Ala.Civ.App.2003).
At the time of trial, both the parties were employed and in their mid-twenties. There was no evidence indicating that either of the parties were in bad health. It was undisputed that the wife had had an adulterous relationship and that the marriage was relatively short-term, lasting only four years. See Seamon v. Seamon, 587 So.2d 333, 335 (Ala.Civ.App.1991) (stating that five-year marriage was relatively short-term). The parties' property consisted of the marital residence, two motor vehicles, one computer, clothing, and household items. There was outstanding debt on the home, vehicles, and computer. The debt on the vehicles was in the husband's name, and the computer debt was in the wife's name. There was no testimony regarding how much equity the parties had in the marital residence or in the vehicle that the husband drove. The husband did testify that he owed more on the vehicle that the wife had driven than the vehicle was worth.
Although the husband was awarded the residence and the vehicles, he was also assigned the associated debt. The wife was awarded the computer and all but three of the household items that she requested. In light of the evidence regarding the factors a trial court is to consider when making a property division, we find that the court acted within its discretion in dividing the marital property.
The wife also argues that the trial court awarded the husband property that was the wife's premarital property or that belonged to the wife's family. It appears from the record that there was a dispute of fact as to whether one piece of property, a twin bed set, awarded to the husband was acquired before or after the marriage. Accordingly, the trial court acted within its *496 discretion in awarding the bed set to the husband.
Based on the foregoing, we reverse the trial court's judgment insofar as it requires that the wife's visitation be supervised and determines the wife's child-support obligation based on imputed income to the wife; we remand the case to the trial court for a determination of an appropriate visitation provision and an appropriate child-support award in accordance with this opinion. We affirm the trial court's judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMAS, J., concurs in part, concurs in the result in part, and dissents in part, with writing.
THOMPSON, P.J., and BRYAN, J., concur in part and dissent in part, with writings.
PITTMAN, J., concurs in the result, without writing.
THOMAS, Judge, concurring in part, concurring in the result in part, and dissenting in part.
Although I concur in the main opinion insofar as it affirms the property-division and child-custody awards, I agree with Judge Bryan that the child-support award should be affirmed and join his writing in that regard. I also agree with the main opinion insofar as it reverses the trial court's supervised-visitation award; however, I cannot concur fully in the rationale expressed in the main opinion. I have concluded that the trial court's requirement that the wife's visitation be supervised should be reversed based on slightly different reasoning.
Although a trial court has a wide degree of discretion in visitation matters, see, e.g., Smith v. Smith, 887 So.2d 257, 264 (Ala. Civ.App.2003); Anonymous v. Anonymous, 620 So.2d 43, 44 (Ala.Civ.App.1993), a trial court's decision on such matters may be reversed if the appellant demonstrates a clear and palpable abuse of that discretion. Smith, 887 So.2d at 264. The evidence in this case reflects that the restriction on the wife's visitation is aimed at preventing the wife's alleged paramour from being around the children; nothing in the record demonstrates a need to prevent the wife from being alone with the children out of concern for their safety. A less severe restriction on the wife's visitation, such as one requiring that the paramour not be present during visitation, would accomplish the result the trial court seeks and still allow the wife to exercise her visitation in a more normal and flexible manner. We have reversed restrictions on visitation that were considered more severe than necessary to protect the best interests of the children. Smith v. Smith, 887 So.2d at 264 (reversing a visitation restriction preventing any guests of the opposite sex unrelated by blood or marriage from being present during any period of overnight visitation when both parents lived with members of their respective extended family); and Smith v. Smith, 599 So.2d 1182, 1187 (Ala.Civ.App. 1991) (reversing a visitation restriction preventing the mother from allowing any male to whom she was not married or immediately related to be in her residence during visitation periods as being overly restrictive). Thus, I conclude that the trial court's judgment, insofar as it requires that the wife's visitation be supervised, is too restrictive and should be reversed on that basis.
THOMPSON, Presiding Judge, concurring in part and dissenting in part.
I concur with the main opinion's analysis with regard to all of the issues except *497 visitation. I disagree with the conclusion reached in the main opinion that the trial court's visitation award requires reversal. Accordingly, I must respectfully dissent from that part of the opinion.
An initial award of visitation "`is a matter that rests soundly within the broad discretion of the trial court, and its determination regarding visitation must be affirmed absent a finding that the judgment is not supported by any credible evidence, and that the judgment, therefore, is plainly and palpably wrong.'" Burleson v. Burleson, 875 So.2d 316, 320-21 (Ala.Civ.App. 2003) (quoting Cohn v. Cohn, 658 So.2d 479, 482 (Ala.Civ.App.1994)). "The primary consideration in setting visitation rights is the best interest of the child." DuBois v. DuBois, 714 So.2d 308, 309 (Ala. Civ.App.1998).
The main opinion's analysis of the visitation issue relies principally on this court's decision in Carr v. Broyles, 652 So.2d 299 (Ala.Civ.App.1994). In Carr, this court reversed a trial court's order reducing the mother's visitation and requiring that all visitation be supervised by the mother's parents. In reaching its conclusion in Carr that supervised visitation was not necessary, this court explained that "[t]he testimony that the mother is capable of caring for her daughter during visitation was undisputed. There is no evidence that visiting in her mother's home has ever been, or will be, harmful to the daughter." Id. at 304. However, unlike the record in Carr, the record in this case reveals evidence from which the trial court could have concluded that unsupervised visitation with the wife would be detrimental to the children.
At trial, the husband testified that, when the parties separated for the first time, he did not allow the wife to take the children with her because he did not want the children to "be around" the wife's activities. Though the wife specifically testified that she had never used marijuana, the wife's former boss testified that the wife had confided to her that she had, in fact, used marijuana in the past. The wife admitted that she had been in a relationship with a man ("the former boyfriend") who used marijuana and had been in a rehabilitation program for substance abuse. The wife also admitted that her former boyfriend had been convicted for assault in North Carolina. The husband testified that the wife's former boyfriend had threatened the husband and that, as a result, the husband had moved out of his apartment for safety reasons. The wife stated that she had allowed her former boyfriend to visit with her when she was keeping the children. Also, though the wife stated that she and her former boyfriend were just "friends" at the time of the trial, she indicated that she was open to having a relationship with him in the future. Based on this evidence, I find that the trial court could have concluded that unsupervised visitation was not in the children's best interest at this time.
The main opinion also seems to rely on a sentence from Carr, which states:
"This court has upheld supervised visitation in cases in which there were allegations of abuse on the part of the noncustodial parent or in instances in which the noncustodial parent experienced severe psychological problems. See, e.g., I.L. v. L.D.L., Jr., 604 So.2d 425 (Ala.Civ.App. 1992); Y.A.M. v. M.R.M., 600 So.2d 1035 (Ala.Civ.App.1992); Watson v. Watson, 555 So.2d 1115 (Ala.Civ.App.1989); Caldwell v. Fisk, 523 So.2d 464 (Ala.Civ. App.1988)."
Carr v. Broyles, 652 So.2d at 304. However, though this court has upheld supervised visitation in circumstances involving allegations of abuse or psychological problems, we have never held that supervised *498 visitation is limited only to such circumstances. Accordingly, in view of the discretion afforded to the trial court in child-custody determinations, and because I view the evidence presented at trial as sufficient to justify an order requiring supervised visitation for the wife, I would affirm the trial court's visitation award.
BRYAN, Judge, concurring in part and dissenting in part.
I concur with the main opinion insofar as it affirms the trial court's judgment on the issues of the failure to conduct a hearing on the mother's postjudgment motions, custody, and property division. However, I respectfully dissent regarding the issues of child support and visitation.
Regarding the issue of voluntarily unemployment or underemployment, this court has previously stated: "A determination that a parent is voluntarily unemployed or underemployed `is to be made from the facts presented according to the judicial discretion of the trial court.'" Berryhill v. Reeves, 705 So.2d 505, 507 (Ala.Civ.App. 1997) (quoting Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992)) (emphasis added). Furthermore, "[t]he determination of whether a parent paying child support is voluntarily underemployed or unemployed is discretionary with the trial court." Mitchell v. Mitchell, 723 So.2d 1267, 1269 (Ala.Civ.App.1998) (citing Griggs v. Griggs, 638 So.2d 916 (Ala.Civ. App.1994)) (emphasis added).
In the present case, the evidence established that the wife was earning $8.00 an hour plus commission in her prior position. The wife was discharged from that position due to complaints her employer had received regarding the wife's poor customer service. Thus, that discharge was a result of her own behavior. The wife was thereafter unemployed for approximately five months. The wife then obtained employment shortly before trial; however, she was unable to work 40 hours a week, partly because she was unable to travel for her job due to a lack of transportation.
Based on the foregoing facts, the trial court could have concluded that the wife was voluntarily underemployed. The trial court could have concluded that the wife's discharge was due to her own negligence in conducting her duties. See Van Houten v. Van Houten, 895 So.2d 982, 987 (Ala. Civ.App.2004) (affirming the judgment finding voluntary underemployment when a parent failed to comply with the requests of his employer and, as a result, was asked to resign).
Furthermore, because the wife does not have transportation and is unable to work 40 hours a week at her present position, the trial court also could have concluded that the wife could have found employment earning minimum wage where she was not required to travel. See J.L. v. A.Y., 844 So.2d 1221, 1226 (Ala.Civ.App.2002) (plurality opinion) (affirming the judgment finding voluntary underemployment and imputing an income of full-time minimum wage when a parent was a full-time student, working part-time earning minimum wage); and Romano v. Romano, 703 So.2d 374, 376 (Ala.Civ.App.1997) (affirming the judgment finding that that parent was capable of working and imputing an income of minimum wage).
Based on the foregoing reasons, I cannot conclude that the trial court's factual determination  that the wife had voluntarily forgone employment earning at least an income of minimum wage  was an abuse of discretion.
I also dissent regarding the issue of visitation. I join Presiding Judge Thompson's writing regarding that issue.